

FILED
IN OPEN COURT

MAY 11 2022

CLERK, U.S. DISTRICT COURT
NEWPORT NEWS, VA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | FILED UNDER SEAL |
| | ) | |
| v. | ) | CRIMINAL NO. 4:22-cr-45 |
| | ) | |
| KWAMAINE LAMONT DAVIS, | ) | 18 U.S.C. §§ 1040(a)(2) and 2 |
| a/k/a "Kwamaine Davis-Bey," | ) | Fraud in Connection with |
| a/k/a "Spade," | ) | Major Disaster Benefits |
| | ) | (Counts 1-4) |
| Defendant. | ) | |
| | ) | 18 U.S.C. §§ 1343 and 2 |
| | ) | Wire Fraud |
| | ) | (Counts 5-8) |
| | ) | |
| | ) | 18 U.S.C. §§ 1341 and 2 |
| | ) | Mail Fraud |
| | ) | (Counts 9-10) |
| | ) | |
| | ) | 18 U.S.C. §§ 1028A(a)(1) and (c) |
| | ) | Aggravated Identity Theft |
| | ) | (Counts 11-12) |
| | ) | |
| | ) | 18 U.S.C. § 981(a)(1)(C) & |
| | ) | 28 U.S.C. § 2461 |
| | ) | Asset Forfeiture |

## INDICTMENT

*May 2022 Term – at Newport News, Virginia*

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment, unless otherwise stated:

### INTRODUCTORY ALLEGATIONS

1. Unemployment Insurance ("UI") is a joint state-federal program that is intended to provide temporary financial assistance to unemployment workers who are unemployed through no fault of their own. The federal UI trust fund finances the costs of administering unemployment insurance programs, loans made to state unemployment UI funds, and fifty percent of extended

benefits during periods of high unemployment. States can borrow from the federal fund if their own reserves are insufficient. Each state, including the Commonwealth of Virginia, administers a separate UI program, but all states follow the same guidelines established by federal law.

2. In March 2020, the United States was in the midst of the coronavirus ("COVID-19") pandemic, which resulted in the shutdown of numerous businesses and caused millions of American workers to be out of work. On March 12, 2020, the President declared a national emergency under Section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S. §§ 5121 et seq. ("Stafford Act"). On March 18, 2020, the President signed into law the Families First Coronavirus Response Act ("FFCRA"), which provided additional flexibility for state unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. The CARES Act expanded states' ability to provide unemployment insurance for many workers impacted by the COVID-19 pandemic. The CARES Act dedicated over $250 billion to give workers more access to unemployment benefits during the public health emergency.

3. The CARES Act expanded unemployment benefits during the pandemic by (1) making those benefits available for those who have not traditionally qualified, such as contractors, self-employed, and gig workers and (2) substantially increasing the amount of money paid to those who qualify for unemployment benefits.

4. As of April 18, 2020, the President had declared that a major disaster exists in all States and territories under Section 401 of the Stafford Act. On August 8, 2020, to further offset the pandemic's impact on American workers, the President authorized the Federal Emergency Management Agency ("FEMA") to expend up to $44 billion from the Disaster Relief Funds for lost wage payments. The President authorized the FEMA Administrator to provide grants to

participating states, territories, and the District of Columbia to administer delivery of lost wages assistance ("LWA") to those receiving unemployment insurance.

5.  The Virginia Employment Commission ("VEC") is responsible for administering the unemployment compensation program in the Commonwealth of Virginia. This unemployment compensation program provides temporary financial assistance to individuals who become unemployed through no fault of their own. Specifically, prior to the expanded COVID-19 benefits described below, eligible recipients received a minimum of $158 per week in traditional UI benefits.

6.  The VEC divided the employment compensation program into the following four UI benefit components based upon the CARES Act and the FEMA LWA authorization:

    a.  Federal Pandemic Unemployment Compensation Program ("FPUC") – The CARES Act increased benefits for workers collecting UI by $600 per week for claims effective on or about April 5, 2020, through on or about July 31, 2020, thereby increasing the weekly benefit to $758 per week.

    b.  Pandemic Unemployment Assistance ("PUA") – The CARES Act expanded unemployment benefits for individuals who did not qualify for traditional UI benefits, including the self-employed, independent contractors, and gig workers. The PUA benefit expansion applied to weeks of unemployment from on or about January 27, 2020, through on or about December 31, 2020.

    c.  Pandemic Emergency Unemployment Compensation ("PEUC") – The CARES Act provided up to 13 weeks of unemployment insurance benefits to those who have exhausted their eligibility, and applied to weeks of unemployment from on or about April 5, 2020, through on or about December 31, 2020.

    d.  Lost Wages Assistance ("LWA") – The FEMA LWA authorization provided an additional $300 per week to claimants in Virginia who are eligible for at least $100 per week in unemployment insurance compensation. For claimants in Virginia, LWA was automatically paid out in one lump sum of $1,800 on or about October 19, 2020, covering the time period between on or about July 25, 2020 (when the $600/week PUA benefits expired), and September 5, 2020, so long as the claimant had certified unemployment eligibility during that time period. LWA funds are federal monies, but their distribution was administered by the VEC.

7. Unemployed workers in the Commonwealth of Virginia can file for UI benefits either by phone or through the VEC online portal. To be eligible for UI benefits, the claimants must have been separated from their employer or had their hours reduced by their employer.

8. The VEC application for a UI claim requires entry of personally identifiable information ("PII"), including the applicant's name, date of birth, social security number, address, and phone number. It also requires answering a series of questions to verify eligibility – namely, the applicant's work history, name of employer, reason for separation, and a certification that the applicant is ready, willing, and able to work. To qualify for PUA benefits, the applicant must further certify that they lost their job due to the COVID-19 pandemic.

9. Once the VEC approves a UI claim, claimants must recertify their unemployment status on a weekly basis. The claimant must certify that they are ready, willing, and able to work each day during the weeks they claimed UI. Both initial applications and weekly recertifications are attested to as truthful under penalty of perjury.

10. Successful applicants may choose whether to have VEC deposit their unemployment benefits directly in a linked bank account or loaded onto a prepaid debit card (called "Way2Go" cards) which are shipped to the applicant via the United States Postal Service ("USPS") to the physical address listed on the application. For applicants who choose a debit card, a Personal Identification Number ("PIN") for the card is sent to the address listed on the application in a separate mailing. Prepaid debit cards are automatically reloaded with newly disbursed funds via electronic transfers using the Internet.

11. Under the CARES Act, the VEC approved PUA benefits for workers who normally would not qualify for UI benefits, to include the self-employed, freelancers, and independent contractors. Such workers typically don't have a wage history for the VEC to verify. Based on this PUA change, the VEC had to rely and trust the information provided by the claimant as the

VEC could not quickly verify the information. In an effort to ensure workers who were unemployed due to the pandemic received their benefits in a quick manner, the VEC processed and paid out these claims shortly after the claims were submitted. The VEC did not initially require any documentary evidence to be provided in support of the application for benefits.

12. In or around June 2020, the VEC began reviewing UI claims to identify potentially fraudulent claims submitted under the expanded PUA eligibility. By August 2020, VEC officials learned from other states that incarcerated individuals in prisons were receiving UI benefits. Incarcerated individuals are not available for employment, nor are they able to seek full-time employment. Further, these individuals are unemployed due to their own criminal conduct and not due to COVID-19. For those reasons, incarcerated individuals are not eligible to receive UI benefits, including PUA, LWA and FPUC. Consequently, VEC obtained a list of incarcerated individuals housed by the Virginia Department of Corrections ("VADOC") and cross-matched Virginia UI claims to individuals who were shown to have been incarcerated in VADOC facilities at the time of their UI claims. In November 2020, once a review of the data showed how the fraud scheme was unfolding, the VEC froze all claims made on behalf of VADOC incarcerated individuals.

13. An investigation determined that KWAMAINE LAMONT DAVIS, a/k/a "Kwamaine Davis-Bey," a/k/a "Spade," (hereinafter "the defendant"), a resident of Newport News, Virginia, within the Eastern District of Virginia, engaged in a scheme whereby he obtained personally identifiable information (PII) for incarcerated individuals in VADOC and caused the filing of fraudulent UI claims via the VEC to obtain the UI benefits in the names of those individuals.

14. The defendant caused the submission of at least five inmate claims with false information totaling approximately $66,232.00. The defendant would use false information, to

include address, telephone number, last employer, when submitting the UI claims to certify the individuals were unemployed due to COVID-19.

15. The defendant would submit weekly certifications attesting those individuals were ready, willing, and able to work, when in fact, they were not due to the individuals being incarcerated. The defendant kicked back some of the proceeds to the incarcerated individuals, but kept most of the funds for himself, to include failing to pay the incarcerated individuals the monies he promised to pay them in exchange for their PII.

16. The defendant was also associated with two non-inmate UI claims for individuals who were underage and not eligible for UI benefits. False information, to include age and last employer, was provided for the UI claim. It was determined some of the proceeds of the UI benefits for those underage individuals went to the defendant.

17. In or about May 2020, the defendant filed a UI claim. He thereafter filed a separate PUA claim as required by the VEC. The defendant received a total of $12,405 in UI benefits in 2020. The defendant received $10,131.00 to a Chime Card registered in his name, and $2,274.00 deposited to a Way2Go card.

18. By June 2020, the defendant became aware that UI claims being submitted for incarcerated individuals were being approved by the VEC. The defendant began having conversations with incarcerated individuals in VADOC (via phone call and email) regarding the UI filings to obtain funds. Various inmates provided the defendant the PII for eight incarcerated individuals. Five of the eight claims were successfully submitted by the defendant which paid a total of $66,232.

19. The claims submitted using the identities of the inmates contained materially false and misleading information, to include the physical address of the claimant (these inmates were residing at a prison and not at the physical address reported for them); and the Last Employer (the

inmates were not employed as they were being housed at a prison). Furthermore, the applicants must certify they are ready, willing, and able to work if employment becomes available. Due to the inmate's incarceration, it would be impossible for the inmate claimants to be ready, willing, and able to work in the event employment becomes available.

20. While the VEC paid $66,232.00 in benefits, due to deposits being rejected, a total of $31,774.00 was ultimately deposited to bank accounts or deposited to Way2Go cards. The deposits were made to accounts associated with the defendant.

21. Additionally, there were two non-inmate claims submitted to the VEC with false information and payments associated with those claims were paid to the defendant.

## THE SCHEME AND ARTIFICE

22. The object of the scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises was for the defendant to fraudulently obtain unemployment benefits that had been expanded due to the COVID-19 pandemic.

23. It was part of the scheme and artifice that the defendant obtained the PII of incarcerated inmates and other non-inmates, all of whom were not eligible for UI benefits.

24. It was further a part of the scheme and artifice that the defendant used this PII of ineligible individuals to fraudulently make application for UI benefits.

25. It was further a part of the scheme and artifice to defraud that the defendant caused the VEC to disburse approximately $66,232.00 between in or about June 2020 and October 2020, in unemployment benefits. The defendant obtained various portions of these funds.

26. It was further part of the scheme and artifice that the defendant caused electronic transfers of information to occur between locations in the Eastern District of Virginia and terminals and/or computers outside of the Commonwealth of Virginia.

27. It was further part of the scheme and artifice that the defendant caused the use of the United States mails.

## COUNTS ONE THROUGH FOUR
(Fraud in Connection with Major Disaster Benefits)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained above in the Introductory Allegations and the Scheme and Artifice sections are incorporated herein by reference as if set out in full.

2. On or about the following dates in connection with the following claims for UI benefits, in the Eastern District of Virginia, KWAMAINE LAMONT DAVIS, a/k/a "Kwamaine Davis-Bey," a/k/a "Spade," the defendant herein, knowingly made materially false, fictitious and fraudulent statements and representations, including that the defendant falsely claimed that incarcerated individuals (Inmates 1 through 5) were able and available for work during the preceding weeks, accepted all work offered the preceding weeks, and that the inmates' place of employment was closed as a direct result of the COVID-19 public health emergency, and were unable to reach a place of employment due to the advisement to self-quarantine by a health care provider due to concerns related to COVID-19.

3. The aforesaid attestations occurred in a matter involving a benefit, that is, a record, voucher, payment, money or thing of value, good or service, right, or privilege provided by the United States, a State or local government, or other entity, that was authorized, transported, transmitted, transferred, disbursed and paid in connection with a major disaster declaration under Section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act. Specifically, as a result of the false attestations, the defendant received PUA and LWA funds intended for ineligible incarcerated individuals.

4. The authorization, transportation, transmission, transfer, disbursement and payment of the above-described benefits was in and affected interstate and foreign commerce, and the above-described benefit was a record, voucher, payment, money, and thing of value of the United States, and of a department and agency thereof.

9

| Count | Date of Submission (On or About) | Description of Claim |
|---|---|---|
| 1 | 8/3/2020 | Claim for UI benefits for Inmate #1 for week ending 8/1/2020. |
| 2 | 10/5/2020 | Claim for UI benefits for Inmate #1 for week ending 8/8/2020. |
| 3 | 10/5/2020 | Claim for UI benefits for Inmate #1 for week ending 8/15/2020. |
| 4 | 10/5/2020 | Claim for UI benefits for Inmate #1 for week ending 8/22/2020. |

(In violation of Title 18, United States Code, Sections 1040(a)(2) and 2.)

## COUNTS FIVE THROUGH EIGHT
(Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained above in the Introductory Allegations and the Scheme and Artifice sections are incorporated herein by reference as if set out in full.

2. From in or about June 2020 through in or about at least October 2020, the exact dates being unknown to the Grand Jury, in the Eastern District of Virginia and elsewhere, KWAMAINE LAMONT DAVIS, a/k/a "Kwamaine Davis-Bey," a/k/a "Spade," the defendant herein, with intent to defraud, knowingly devised and intended to devise the above-described scheme and artifice to defraud and for obtaining property by means of materially false and fraudulent pretenses, representations and promises.

3. On or about the dates set forth below, in the Eastern District of Virginia, the defendant, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money and property through materially false pretenses, representations, and promises as described above, did knowingly and willfully transmit and cause to be transmitted by means of wire communication in interstate commerce, certain signs, signals, and sounds as set forth in the table below, and from or through locations in the Eastern District of Virginia from, to, or through computers and terminals located outside of the Commonwealth of Virginia:

| Count | Date (on or about) | Transaction |
|---|---|---|
| 5 | 6/28/2020 | Fraudulent and false VEC application, causing the deposit by wire transfer of $758.00 in the defendant's bank account with Bancorp Bank, N.A. |
| 6 | 7/19/2020 | Fraudulent and false VEC application, causing the deposit by wire transfer of $758.00 in the defendant's bank account with Bancorp Bank, N.A. |

11

| 7 | 10/11/2020 | Fraudulent and false VEC application, causing the deposit by wire transfer of $158.00 in the defendant's bank account with Bancorp Bank, N.A. |
| 8 | 10/18/2020 | Fraudulent and false VEC application, causing the deposit by wire transfer of $158.00 in the defendant's bank account with Bancorp Bank, N.A. |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNT NINE AND TEN
## (Mail Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained above in the Introductory Allegations and the Scheme and Artifice sections are incorporated herein by reference as if set out in full.

2. From in or about June 2020 through in or about at least October 2020, the exact dates being unknown to the Grand Jury, in the Eastern District of Virginia, KWAMAINE LAMONT DAVIS, a/k/a "Kwamaine Davis-Bey," a/k/a "Spade," the defendant herein, with intent to defraud, knowingly devised and intended to devise the aforesaid scheme and artifice to defraud and for obtaining property by means of materially false and fraudulent pretenses, representations and promises.

3. On or about the dates set forth below, in the Eastern District of Virginia, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money and property through materially false pretenses, representations, and promises as described above, did knowingly cause to be delivered by U.S. mail according to the directions thereon, the following matters and things:

| Count | Date (on or about) | Description |
| --- | --- | --- |
| 9 | 6/26/2020 | The mailing of a Way2Go debit card to the defendant at the mailing address of \*\*\*Aqueduct Drive, Apartment \*\*\*, Newport News, Virginia 23602. |
| 10 | 7/14/2020 | The mailing of a Way2Go debit card to the defendant at the mailing address of \*\*\*Aqueduct Drive, Apartment \*\*\*, Newport News, Virginia 23602. |

(In violation of Title 18, United States Code, Sections 1341 and 2.)

## COUNTS ELEVEN AND TWELVE
(Aggravated Identity Theft)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained above in the Introductory Allegations and the Scheme and Artifice sections are incorporated herein by reference as if set out in full.

2. The factual allegations contained above are incorporated herein by reference as if set out in full.

3. On or about the dates set forth herein and in the manner described below, in the Eastern District of Virginia and elsewhere, KWAMAINE LAMONT DAVIS, a/k/a "Kwamaine Davis-Bey," a/k/a "Spade," the defendant herein, did unlawfully, knowingly and intentionally use, without lawful authority, a means of identification of another during and in relation to felony violations of a provision contained in Chapter 47 of Title18, to wit: Fraud in Connection with Major Disaster or Emergency Benefits, in violation of Title 18, United States Code, Section 1040(a)(2), all as charged in Counts One through Four of this Indictment:

| Count | Date of Transaction (on or about) | Means of Identification | Description/ Purpose of Transaction | Felony Violation |
|---|---|---|---|---|
| 11 | 8/3/2020 | Personal identifiers, including Social Security Number ending 2675 assigned to Inmate #1. | Use of Inmate #1's identifiers, including Social Security Number ending in 2675, in making claim for UI benefits. | 18 U.S.C. § 1040(a)(2) (ref. Count 1) |
| 12 | 10/5/2020 | Personal identifiers, including Social Security Number ending 2675 assigned to Inmate #1. | Use of Inmate #1's identifiers, including Social Security Number ending in 2675, in making claim for UI benefits. | 18 U.S.C. § 1040(a)(2) (ref. Count 4) |

(In violation of Title 18, United States Code, Sections 1028A(a)(1) and (c).)

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1. The defendant, if convicted of any of the violations alleged in Count Five through Count Ten of this Indictment, shall forfeit to the United States, as part of sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2. If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

(In accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461.)

UNITED STATES v. KWAIMAINE LAMONT DAVIS
4:22-cr-45

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

A TRUE BILL:

**REDACTED COPY**

_____
FOREPERSON

Jessica D. Aber
United States Attorney

By: _____
Brian J. Samuels
Assistant United States Attorney
Virginia State Bar No. 65898
Eastern District of Virginia
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax:   (757) 591-0866
Email: brian.samuels@usdoj.gov

By: _____
William J. Homer
Assistant United States Attorney
Eastern District of Virginia
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax:   (757) 591-0866
Email: william.homer@usdoj.gov